# OVERSHINER et al., Appellants, v. BRITTON et al.

### Division One, June 18, 1902.

1. **Appeals:** SHORT METHOD: FINDING OF FACTS. Where the appeal is by simply filing a certified copy of the judgment, and the abstract contains only the' pleadings, the special finding of facts made by the trial court at the request of the parties, the judgment and the motion for a new trial (the evidence adduced at the trial being not preserved), the finding of facts will be taken to be the facts in the case.

2. **Res Adjudicata:** DIFFERENT PARTIES. If the parties to the action on trial are different from those in the former adjudication, and are not privies in estate, in blood or in representation to any of the parties to that suit, that case is not *res adjudicata.*

3. **Subrogation:** EQUITABLE ESTATE: HEIRS: NECESSARY PARTIES. If one dies intestate as to a claim of an equitable lien on land,' his representatives or heirs are the only parties entitled to maintain an action therefor, and if the suit is brought by his heirs all must be joined and the petition must allege that they are heirs. The interests of the heirs in the subject-matter is joint and not several, and if a part of them are eliminated from the case, it can not proceed as to the others. And although the decedent left a will, yet if it is not broad enough to transmit to the devisees the estate claimed, it will be held that he dies intestate as to it, and if the will itself is not produced in evidence the holding will be the same.'

4. ——: ——: ABANDONMENT: EJECTMENT: LACHES: LIMITATIONS. Where a woman recovers in ejectment for land conveyed by her alone during coverture, the defendant, who had acquired her grantee's interest, then had opportunity to be subrogated to the rights of her grantee for the money paid by him to her for such deed and to ask to have the same made a lien on the land, and if he failed to do so in that action, it will be too late for him to set up such claim eight years afterwards. And aside from the doctrine of laches, such action would be barred within five years after the discovery of the fraud, and it is held that the bringing of the ejectment brought to the knowledge of that defendant whatever fraud she was chargeable with in bringing the ejectment without offering to return the money paid her for the invalid deed.

5. Invalid Conveyance: EQUITABLE LIEN FOR MONEY PAID: DOUBLE RECOVERY. A suit to recover judgment for money paid for an invalid deed and to have it made a lien on the land, can not be maintained if the facts show that such judgment would result in a double recovery.

6. ————: BREACH OF WARRANTY: LIMITATIONS. Although the maker of an invalid deed has recovered in ejectment, after the grantee has sold the land to the defendant, yet a subsequent suit by such defendant, who has become the grantee of the grantee in the invalid deed, for breach of warranty, is barred by limitation, if the plaintiff in ejectment was in fact barred by limitation. And, in such case, the grantee in the invalid deed can not recover from the grantor the money paid therefor, because his own grantee can not complain of a breach of warranty.

7. Appeal: EQUITY: EJECTMENT: THEORY OF TRIAL. Where the first count in the petition sounds in equity, and the second is ejectment, to which there was a general denial, and the second count was entirely lost sight of at the trial, and the judgment is a general one, and the motion for new trial did not specifically call the court's attention to any error in not giving judgment on that count, the case will be disposed of here on the same theory it was at the trial —a general judgment for defendants.

Appeal from St. Clair Circuit Court.—*Hon. W. W. Graves,* Judge.

AFFIRMED.

*Rechow & Pufahl* for appellants.

(1) This case in all its essential features was before this court in the case of Wheelock v. Overshiner, 110 Mo. 100, except that upon all the points upon which that case was decided adverse to defendants' contention, the facts in the case are much stronger. This court having once passed upon all the questions involved in this record, will not review the same. Bank v. Taylor, 62 Mo. 338; Chouteau v. Gibson, 76 Mo. 38; Gaines v. Fender, 82 Mo. 497; Forester v. Railroad, 26 Mo. App. 123; Bevis v. Railroad, 30 Mo. App. 564; McKinney v. Harrell, 30 Mo. App. 338; Wilson

v. Beckwith, 140 Mo. 359; Chapman v. Railroad, 146 Mo. 481. (2) Plaintiffs' grantors had acquired a fee simple by limitation as to all the lands in controversy and the judgment should have been for plaintiffs as to all the land. Wheelock v. Overshiner, supra; Gray v. Yates, 67 Mo. 601. (3) A married woman can make a valid deed when abandoned by her husband, who abides in another State. Phelps v. Walther, 78 Mo. 322; Rose v. Bate, 12 Mo. 30; Gallagher v. Delargy, 57 Mo. 29; Musick v. Dodson, 76 Mo. 628; Fairchild v. Chriswell, 109 Mo. 39. (4) A married woman may sue and be sued when her husband is out of the State or has abandoned her. Phelps v. Walther, supra; Wood on Limitations, p. 479, sec. 240; Tyler on Ejectment, pp. 151, 934; Gallagher v. Delargy, 57 Mo. 30; Musick v. Dodson, 76 Mo. 624; Tyler on Infancy and Coverture, p. 753; Dicey on Parties to Actions, marg. p. 172. (5) The deed of Mrs. Britton to Richards, under the circumstances, clearly conveyed an equity and she will not be permitted to hold both the money and the land. Shroyer v. Nickell, 55 Mo. 269.

*J. H. Childers* and *Adiel Sherwood* for respondents.

(1) This case comes to this court "in short form," and under section 813, Revised Statutes 1899. (2) Unquestionably the deed of a married woman in which her husband does not join, and where she does not possess an equitable separate estate, does not convey anything. Flesh v. Lindsey, 115 Mo. 13; Dyer v. Wittler, 89 Mo. 81; Meriwether v. Howe, 48 Mo. App. 148; Arnold v. Willis, 128 Mo. 145; Barnes v. Bullock, 129 Mo. 119. (3) Assuming that the finding of facts is before the court, the trial court does not therein find sufficient to presume the death of Britton. Flood v. Growney, 126 Mo. 264. (4) The court might well have found the deed from Mrs. Britton to Merideth Richards void

upon the ground of fraud, under the facts alleged in her answer. (5) The judgment of the trial court was for the right party and ought to be affirmed. (6) The trial court does not find that Britton was a non-resident of the State of Missouri. (7) At the death of Young M. Pitts his widow, now Mrs. Britton, took a common-law title to the homestead, subject to the possessory right of the children; and when she intermarried with Britton, her interest could not be conveyed without the joint deed of the husband and wife. (8) The issues in the case of Wheelock v. Overshiner, 110 Mo. 100, are not *res judicata* in this case, for clearly the parties were different so far as this record shows, and the issues unquestionably were different, because, assuming that there is anything before the appellate court for consideration, the finding of facts shows that there was no equitable defense set up in the case of Britton v. Wheelock, and therefore no *res judicata.* The principle of law is clearly established that there is no bar unless the issues are the same and the parties the same. State ex rel. v. St. Louis, 145 Mo. 567.

MARSHALL, J.—The petition is in two counts. The first count is a bill in equity for a lien for $468, with interest from July 7, 1877, on the southeast quarter of the southeast quarter of section one, in township thirty-five, range twenty-two, in Hickory county, for the purchase price paid by Meredith Richards to Mrs. Elenor Britton, on July 7, 1877, for said land, and asking that the land be sold to satisfy the lien so established by the judgment asked, or that the deed from Mrs. Elenor Britton to Meredith Richards be declared valid and binding and that its effect was to pass the legal title to Richards, and that the interest of the defendant James Pitts, be set aside and he be forever barred from asserting any title to the land, and for general relief. And the second count is in the ordinary form of a petition

in ejectment for the same premises, the ouster being laid as of May 2, 1893.

The answer of Elenor Britton is a general denial, a plea of a homestead right to the premises, and a special plea that Meredith Richards procured from her a deed to the premises by false representations, and that she was a married woman when she made the deed and that her husband did not join therein, and therefore the deed is void; and further that long before the commencement of this suit she sold her interest in the land to the defendant Pitts, and she asks an injunction against the plaintiffs from further actions against her.

The case is here upon a certified copy of the judgment, as provided for by section 813, Revised Statutes 1899. The abstract of the record contains only the pleadings, the special findings of fact made by the circuit court at the request of the parties, the judgment, the motion for a new trial, and the appeal. The evidence adduced at the trial is not preserved, so that the finding of facts must be taken to be the facts in the case.

The facts found by the court cover all the facts stated in the equity count of the petition, and, therefore, it is only necessary to set out that finding here to afford a correct understanding of that count of the petition. The finding of facts is as follows:

"SPECIAL FINDING OF FACTS.

"In the case of Laura A. Allen et al. v. Elenor Britton et al., and also in the case of Laura A. Allen et al. v. Benjamin Olinger, at request of plaintiff, the court makes the following finding of facts.

"That the common source of title is Young M. Pitts; that Young M. Pitts died intestate in Hickory county, Missouri, in May or June, 1871; that he left surviving him a

widow, defendant Elenor Pitts and ten children—four adults and six minors; that at the time of his death, he, with his wife and minor children, resided upon and occupied the southeast quarter of section 1, township 35, range 22, less fourteen acres off the east side, as his homestead; that at the time of his death the same did not exceed in value the sum of fifteen hundred dollars; that there was a forty-acre tract in Polk county, adjoining or cornering with this tract in Hickory, but just how it was used during the life of Young M. Pitts does not satisfactorily appear. That in 1872, Elenor Pitts, now Elenor Britton, commenced suit in the circuit court of Hickory county for the assignment of dower and the southwest quarter of the southeast quarter of section 1, township 35, range 22, was set off to her as her dower. There is some testimony that all, or a part of, or some interest in, this forty acres in Polk county was set off to her at the same time as part of her dower, but the evidence is not such as to justify such a finding. Whether this dower was set off under the proceedings in court or otherwise, is not exactly clear, but in my judgment is clear enough to find that it was set off under such proceeding; that the widow at once had the southwest quarter of the southeast quarter of section 1, above mentioned, separated by fence from the remainder of the southeast quarter of said section, having with her the minor children. That, at this time, and while Mrs. Pitts was single, the adult heirs, for themselves, and the minors, by their guardian, W. A. Pitts, took the exclusive, open and notorious possession of the other three forties under a claim of ownership and with the knowledge and apparent consent of the widow, but the said widow was at the time ignorant of her homestead right. That, after the assignment of dower, and on August 12, 1873, Elenor Pitts, the widow, married one Nathan Britton; that Nathan Britton lived with her for a year or more, but less than two years, when he left her and lived in Arkansas for a time,

whether permanently as his home or temporarily, does not appear. Britton then visited his brother in Missouri for a few hours and left for Colorado, where he was last heard from, November 23, 1877, at both of which times he was in delicate health. Whether he left Missouri for Colorado to change his domicile and make Colorado his home and his residence, does not appear from the testimony. The evidence discloses that the last permanent residence of Britton was in Missouri, and does not disclose the exact character of his residence out of this State. That, soon after the assignment of dower, the heirs commenced an ex parte action for partition, to which action Mrs. Britton was not a party. In this action all the lands were ordered sold at the November term, 1874, of the Hickory Circuit Court, and were sold at the May term, 1875, at which sale Meredith Richards became the purchaser and received a deed therefor, and immediately took possession of all, except the southwest forty· of the 146 acres, being the three fractional forties held by the heirs; that Richards held the open, notorious, exclusive and adverse possession of the three forties until July 7, 1877, when he obtained a deed from Elenor Britton, warranty in form, conveying her dower interest in the forty set off to her as dower, for which he paid her the sum of $480; that after the making of this deed Richards took the possession of this forty and continued in the open, notorious, exclusive and adverse possession of the whole southeast quarter of said section 1, until 1881, when he sold and conveyed the same to James C. Wheelock by warranty deed, who went into possession thereof and by himself and tenants held the possession until November, 1888, when he was ejected by Mrs. Britton. The court further finds that Nathan Britton left his wife in 1875, and that the last time she heard from him was in 1876, when she was told that he had been seen in the penitentiary at Little Rock, Arkansas; that the last time Britton was ever heard from

was November 23, 1877, at which time he was at Boulder, Colorado.

"Elenor Britton commenced suit against Wheelock and his tenants May 5, 1888, and obtained judgment for possession against him in November, 1888, under which judgment Wheelock was ousted. Wheelock then sued W. D. Pitts and John Overshiner in the circuit court of Polk county, on the covenants of warranty in deed of Meredith Richards, they being executors of one of the devisees under the will made by said Richards, and as devisees themselves under said will, and recovered judgment, which was reversed, but upon retrial his administrator again obtained judgment, which was paid. The heirs of said J. C. Wheelock conveyed the title acquired by their father from Meredith Richards to plaintiffs, who now prosecute these suits. (By mistake two of the Wheelock heirs do not embrace a part of the land in their deeds.)

"The court further finds that there was no equitable defense set up in the case of Britton vs. Wheelock, and there is, therefore, no *res judicata.* That the value of the rents are one dollar per acre per year. That Mrs. Britton, and the tenants holding under her, have been in possession since November, 1888.

"The court further finds, that, under all the evidence, the deed from Elenor Britton to Meredith Richards is void."

The special plea of the defendant Elenor Britton, which is set up in this case and referred to in the special finding of facts, is as follows:

"The said defendant for further answer and defense to the cause in the first count in said petition stated, admits that Young M. Pitts, her then husband, departed this life in 1871, seized in fee simple and possessed of the lands in plaintiff's petition described, and alleges that he, the said Young M. Pitts, at the time of his death resided upon and held said premises as his homestead, which upon his death

passed to and vested in this defendant in fee by operation of law, together with other land; that she was ignorant of her said homestead rights and title thereto, being unable to read or write, and was until 1888 wholly so ignorant and was informed and supposed from what was claimed by the heirs of said Young M. Pitts and their counsel, that her only rights in said property was a mere dower right, which would exist only during her life and would then pass to the owner or holder of said land under the heirs of said Young M. Pitts, deceased. That after the death of her said husband she again married one Britton, and while he was yet her husband one Meredith Richards claimed and pretended that he had become and was the owner in fee of said lands, subject to this defendant's dower right or life estate therein, and proposed to exchange other property therefor and induced this defendant to believe by such false statements that her estate in said lands was limited to her life, and that she had and held no estate of inheritance therein, and thereby induced this defendant to execute a release of such pretended dower right in exchange for other property at the grossly inadequate value of about one hundred dollars, while the value of this defendant's real rights in said land was one thousand dollars; that said Richards was a man of large business and great sagacity and knew all the facts in relation to the title of said land, as aforesaid, and immediately after this defendant's said pretended release of dower, as aforesaid, entered into possession of said premises and he and those holding under him from that time down to 1888 received all the rents and profits thereof of the reasonable value of one hundred dollars per annum, which were assessed at the sum of ———— dollars in the action in ejectment by defendant against J. C. Wheelock in this court in 1888 for the time he held the same, but which was never paid, but which this defendant is entitled to receive and recover before the plaintiffs could recover, even though entitled to such recovery, together with such

rents and profits during the time the said Richards was so in possession thereof, with interest thereon. That at the time of such release of her supposed dower right in said land she was a married woman and her husband refused to join therein, so that the same was and is null and void and of no effect."

The circuit court entered judgment for the defendants, and the plaintiffs appealed.

### I.

The case of Wheelock v. Overshiner, 110 Mo. 100, is not *res adjudicata* of this case, for the reason that the defendants herein were not parties to that action, nor are they privies in estate, in blood or in representation, to any of the parties to that suit. [State ex rel. v. St. Louis, 145 Mo. l. c. 567.] This being true, the decision in that case, so far as these defendants are concerned, can not be treated as establishing a rule of property. The principles of law announced in that case, so far as they are applicable to the facts in this case, will, of course, govern the decision in this case.

### II.

The theory of the first count of the petition is that, notwithstanding the deed from Mrs. Britton to Richards of July 7, 1877, is void because she was then a married woman and her husband did not join in the deed, still as she elected to treat that deed as void, and recovered the possession of the land, without returning the purchase price paid for the land, therefore, the plaintiffs, John Overshiner, W. D. Pitts, Meredith R. Pitts and Laura A. Allen, are entitled to a lien, in equity, on the forty acres conveyed by Mrs. Britton, for the price paid her by Richards for that land.

There are several reasons that stand in the way of the maintenance of this theory.

*First.* The plaintiffs have not shown themselves to have been subrogated to the claims of Meredith Richards, who paid the money to Mrs. Britton. The petition states that they are the devisees and distributees of Meredith Richards, but as no evidence is preserved by this record, this court can not tell whether there was any evidence adduced to support that averment of the petition or not. The special finding of facts does not find this averment to be true. That finding in speaking of the case of Wheelock v. Overshiner, 110 Mo. 100, says Wheelock sued W. D. Pitts and John Overshiner, "they being executors of one of the devisees under the will made by said Richards, and as devisees themselves under said will," but while this might be some foundation upon which to claim that John Overshiner and W. D. Pitts are devisees under the will of Meredith Richards, still it does not show that Meredith R. Pitts or Laura A. Allen, the other plaintiffs herein, are such devisees and distributees, nor that they are in anywise related to Meredith Richards, and these plaintiffs can not be eliminated and the case be allowed to proceed as to John Overshiner and W. D. Pitts, because this finding shows that they are not all of the devisees of Meredith Richards, and all of his heirs or devisees must be made parties to this suit, for their interest in the subject-matter of the suit is joint and not several. This does not rest upon a mere non-joinder of parties, but goes to the question of a failure of proof to entitle the plaintiffs to a judgment upon the pleadings and proofs and findings in this case. Moreover, if we look to the case of Wheelock v. Overshiner, 110 Mo. 100, it only complicates the situation, for it appears from the opinion in that case that Meredith Richards died, testate, seized of a large estate, outside of this land, all of which other property he devised to his wife Mary (who has since died) and John Overshiner and W. D. Pitts are the executors of her estate, and to John Overshiner, Reuben Richards, and Eliza Pitts. Neither Reuben Richards nor Eliza Pitts are parties to this action. Nothing

is said in the opinion in that case about Meredith Richards's attempting to will this land, or any equitable lien on this land, for the purchase price he paid therefor. And it was not to be expected that Richards would say anything about such matters in his will, because he had sold the land to Wheelock in 1881, and he was in possession thereof, and neither Richards nor Wheelock expected that Mrs. Britton would thereafter (as she did in 1888) sue to recover the land. Hence, so far as this claim or this land is concerned, the will of Richards made no special disposition thereof. That will is not before us, so that it is unknown whether its general terms are broad enough or sufficient to transmit this equitable claim to these plaintiffs. If it did not, then Richards died intestate as to this claim of an equitable lien on this land, and if this be true his representatives or his heirs are the only parties entitled to maintain an action therefor, and the petition does not charge that the plaintiffs are heirs or the only heirs of Richards.

*Second.* The money was paid by Richards to Mrs. Britton on July 7, 1877. This suit was brought in 1896; that is, nineteen years after the cause of action accrued. The claim is not only barred by limitation, but the claim is stale, the parties have slept on their rights and are not now entitled to the aid of a court of chancery. [Burdett v. May, 100 Mo. l. c. 18; 18 Am. and Eng. Ency. Law (2 Ed.), p. 97.] If, however, it be said that neither Richards nor his grantee Wheelock were disturbed in their possession and enjoyment of the land until Mrs. Britton brought the ejectment suit in 1888 and, therefore, the cause of action then accrued to charge this land with an equitable lien for the purchase price, this will not help the plaintiffs' case. For if the cause of action then accrued, if it was a fraud for Mrs. Britton to thus recover the land without refunding the purchase price she had received from Richards for the land, that fact and that fraud was at that time brought to the knowledge of Wheelock, and if he, by virtue of the warranty deed from Richards, was subrogated

in equity to Richards's right to such an equitable lien, then he should have asserted that claim in that ejectment suit against him. It does not appear from this record whether he did so or not. At any rate he abided by that judgment and it is too late for him to set up such a claim now. For, aside from the doctrine of laches, the fraud became known in 1888, and section 4273, Revised Statutes 1899, requires the action to be brought within five years after the fraud is discovered, and this action was not brought until 1896, which was eight years after the fraud was discovered. But if it be said that these plaintiffs were not parties to the ejectment suit of Mrs. Britton vs. Wheelock in 1888, and, hence, could not then have set up this claim and did not then know of this fraud, this will not entirely cure the infirmity or remove the objection, for the reason, that after Mrs. Britton ousted Wheelock in 1888, Wheelock sued John Overshiner and W. D. Pitts. as executors of the estate of Mary Richards and as devisees themselves under the will of Meredith Richards, to recover damages for the breach of the covenant of warranty in the deed from Richards to Wheelock. That suit was begun on the thirtieth of November, 1888. The plaintiffs' cause of action to fasten a lien on this land therefore accrued on November 30, 1888, and they then had notice of the fraud and this suit was not brought within five years thereafter. Hence, the equity count is not only barred by the laches of the plaintiffs, but also by the statute of limitations.

*Third.* It is not clear, however, whether the plaintiffs claim a right to recover upon the first count of the petition by reason of being devisees of Richards and therefore subrogated in this way to his right to an equitable lien, or whether they predicate their right to recover upon the right acquired by them from Wheelock. It appears that after the decision of this court in Wheelock v. Overshiner, 110 Mo. 100, wherein this court held that Wheelock could not recover against Rich-

Vol. 169 mo—23

ards's devisees on the covenant of warranty, because Mrs. Britton's claim to the land was barred by limitation in 1888 when she sued Wheelock and ousted him from possession, and that Wheelock then had a title superior to Mrs. Britton's and therefore there had been no breach of warranty, the case was retried in the circuit court, and despite what this court had said, the plaintiff, Wheelock, again recovered a judgment, for eighteen hundred dollars, against the defendants therein. It is not disclosed by this record upon what theory that result was attained, nor whether the issues were the same or the facts the same on the retrial of that case as they were when this court decided it. At any rate, it does appear that the defendants therein, of whom John Overshiner and W. D. Pitts are plaintiffs in this action, instead of again appealing to this court and showing that the circuit court had rendered a judgment against them in a case wherein this court had said they were not liable, as any party aggrieved by such a judgment would naturally have done, paid that judgment and took a quitclaim deed from Wheelock for the land. These facts are alleged in the petition, and it does not clearly appear whether these plaintiffs are asserting a right thus acquired from Wheelock or not.

But no such considerations would be sufficient to justify a judgment for the plaintiffs. If, as this court decided in Wheelock v. Overshiner, 110 Mo. 100, Wheelock could not recover from the heirs or devisees of Richards upon the covenants of warranty, because Wheelock and Richards together had acquired a title to the land superior to that of Mrs. Britton, then it follows that Wheelock was not damaged, and as Richards sold the land that he says he paid Mrs. Britton $468 for, to Wheelock for $1,800, it follows that Richards has not been damaged, that no fraud was perpetrated upon him by Mrs. Britton which resulted in a loss to him, and that if he or his devisees or heirs were allowed now to charge the purchase price as a lien on the land and have the land sold and that lien paid

to them, it would be a double recovery; that is, Richards received back the price he paid Mrs. Britton for the land when he sold to Wheelock. Neither he nor his devisees were obliged to pay Wheelock anything because there had been no breach of covenant, and if his devisees are now permitted to recover back from Mrs. Britton the purchase price paid her by Richards, the result would be Richards and his devisees would have recovered double pay for the land, and Richards and his grantees will have a title to the land superior to the title of Mrs. Britton, and Mrs. Britton will have handed back the purchase price of the land she received and will have no title to the land and will have received nothing for the land.

These considerations show that there is no equity in the first count of the petition, that the plaintiffs are barred by laches and by limitation. The logical result of the decision, in Wheelock v. Overshiner, that Mrs. Britton's claim to the land was barred by limitation in 1888, is that the claim of Richards and his devisees or heirs, to recover the purchase price paid for the land, was likewise barred by limitation. For it could not be that the claim of Wheelock against Richards's devisees upon the covenant of warranty could not be maintained because there had been no breach of the covenant, and at the same time be true that Richards or his devisees are entitled to a lien on the land for the purchase price of the land. The subsequent proceedings in the case of Wheelock v. Overshiner can not impair the effect of that decision nor authorize a recovery by these plaintiffs either in their own right as devisees or as heirs of Richards or as grantees under the quitclaim deed from Wheelock or because they paid the judgment to Wheelock in the face of the decision of this court that they were not liable and that no judgment could legally be rendered against them on that account.

It follows, therefore, that the judgment of the circuit court was right as to the equity count of the petition.

## III.

The second count of the petition is a suit in ejectment to recover the land. This count seems to have been ignored or lost sight of in the trial court, and nothing is said about it in this court. The case was tried below, and has been presented here, upon the first count of the petition, and not upon a right to recover in ejectment based upon title by limitation solely. The case must, therefore, be disposed of here upon the same theory upon which the parties tried it in the circuit court. But even if this was not so, the second count is an action at law. The answer thereto is a general denial. No evidence is preserved by the record, and the special finding of fact does not fit the issues joined under the second count. No instructions were asked or given so far as it is disclosed by the record. The motion for new trial did not specifically call the attention of the trial court to any error alleged to have been committed by that court in not giving judgment for the plaintiff under the second count. Under these circumstances the general judgment for the defendants can not be reviewed or set aside because of the second count in the petition.

The judgment of the circuit court is therefore affirmed. All concur.